In the Matter of the TITLE, BALLOT TITLE, AND SUBMISSION CLAUSE FOR 2009–2010, # 24.

Philip Hayes, Petitioner,

v.

Gail Lidley and Hitesh Patel, Proponents, Respondents,

and

William A. Hobbs and Daniel Cartin, Title Board.

In the Matter of the Title, Ballot Title, and Submission Clause for 2009–2010, # 23.

Philip Hayes, Petitioner,

v.

Gail Lidley and Hitesh Patel, Proponents, Respondents,

and

William A. Hobbs and Daniel Cartin, Title Board.

In the Matter of the Title, Ballot Title, and Submission Clause for 2009–2010, # 22.

Philip Hayes, Petitioner,

v.

Gail Lidley and Hitesh Patel, Proponents, Respondents,

and

William A. Hobbs and Daniel Cartin, Title Board.

Nos. 09SA165, 09SA166, 09SA167.

Supreme Court of Colorado, En Banc.

Oct. 13, 2009.

**352**

Isaacson Rosenbaum P.C., Mark G. Grueskin, Denver, Colorado, Attorneys for Petitioner.

Hackstaff Gessler LLC, Scott E. Gessler, Mario D. Nicolais, II, Denver, Colorado, Attorneys for Respondents.

John W. Suthers, Attorney General, Maurice G. Knaizer, Deputy Attorney General, Department of Law, State Services Section, Denver, Colorado, Attorneys for Title Board.

Justice MARTINEZ delivered the Opinion of the Court.

In this consolidated original proceeding pursuant to section 1–40–107(2), C.R.S. (2009), Philip Hayes challenges the actions of the Title Setting Board (the "Board") in setting titles, ballot titles, and submission clauses for Initiatives 2009–2010 # 22, # 23, and # 24 (collectively the "Initiatives"). The Initiatives concern an employee's right to a secret ballot in employee representation elections. The text of the Initiatives, along with the titles, ballot titles, and submission clauses as fixed by the Board, are appended to the end of this opinion.

Hayes contends that the Initiatives contain more than a single subject in violation of article V, section 1(5.5) of the Colorado Constitution. Specifically, Hayes asserts the Initiatives seek to establish both a general right to secret ballot voting in all voting situations, and a more narrow right to secret ballot voting in employee representation elections.

However, Hayes' reading of the Initiatives focuses on one sentence and ignores the context supplied by text on either side. Upon reading the Initiatives as a whole, we conclude the Initiatives carry out only one general purpose. Thus, we hold the Initiatives do not violate the constitutional prohibition on multiple subjects.

Hayes further argues that certain words within the Initiatives and their titles are misleading. Hayes states that the term "guarantee" is a legal term of art that is likely to be misunderstood by voters. In so arguing, Hayes asks us to provide a legal interpretation of the Initiatives prior to their implementation. We decline to do so. Furthermore, we conclude the use of "guarantee" does not mislead voters as to the Initiatives' purpose or fundamental operation.

Finally, Hayes argues that Initiative # 24 defines "Political Subdivision" in a counterintuitive way, and so alleges the definition should be spelled out in the titles to the Initiatives. We conclude that the definition is neither new nor contentious, and that the Board's action in setting title in this respect was within its discretion.

We therefore affirm the actions of the Board.

**I.**

Hayes contends that the language of the Initiatives violates Colorado's constitutional requirement that they be limited to a single subject. *See* Colo. Const. art. V, § 1(5.5). Article V, section 1(5.5) of the Colorado Constitution requires that "[n]o measure shall be proposed by petition containing more than one subject." To run afoul of the Colorado Constitution's single subject requirement, the text of a measure "must have at least two distinct and separate purposes which are not dependent upon or connected with each other." *In re Title, Ballot Title, Submission Clause, and Summary for "Public Rights in Waters II" (In re Waters II)*, 898 P.2d 1076, 1078–79 (Colo.1995) (internal citations omitted). "[I]f the initiative tends to effect or to carry out one general object or purpose, it is a single subject under the law." *Id.* at 1079.

In reviewing a challenge such as this one, "we will engage in all legitimate presumptions in favor of the propriety of the Board's actions." *In re Title, Ballot Title, Submission Clause, and Summary with Regard to a Proposed Amendment to the Constitution of the State of Colorado Adding Section 2 to Article VII*, 900 P.2d 104, 108 (Colo.1995). We do not "determine an initiative's efficacy, construction, or future application." *In re Title, Ballot Title, and Submission Clause for 2007–2008 # 17 (In re Dep't for Envtl. Conservation)*, 172 P.3d 871, 874 (Colo.2007). However, some examination of the initiative's text is often necessary in order to determine whether an initiative presents more than one subject to voters. *See In re Title, Ballot Title, Submission Clause, and Summary for 1997–98 # 84*, 961 P.2d 456, 458 (Colo.1998).

The purpose of the constitutional prohibition guides our review.[1] "An initiative that joins multiple subjects poses the danger of voter surprise and fraud occasioned by the inadvertent passage of a surreptitious provision coiled up in the folds of a complex issue." *In re Dep't for Envtl. Conservation*, 172 P.3d at 875 (citing *In re Title, Ballot Title, Submission Clause, and Summary for 2001–02 # 43*, 46 P.3d 438, 442 (Colo.2002)). Thus, the single subject requirement protects against proponents that might seek to secure an initiative's passage by joining together unrelated or even conflicting purposes and pushing voters into an all-or-nothing decision. *See In re Waters II*, 898 P.2d at 1079. However, the single subject requirement should be construed liberally to avoid unduly restricting the initiative process. *In re Title, Ballot Title, and Submission Clause for 2007–2008 # 61*, 184 P.3d 747, 750 (Colo.2008) (citing *In re Proposed Initiative for 1997–1998 # 74*, 962 P.2d 927, 929 (Colo.1998)).

Hayes' single-subject challenge is based on a reading of the Initiatives that divorces each sentence from surrounding text. The headings and first two sentences of each of the challenged Initiatives are, for the purposes of this discussion, all the same.[2] They read:

> *Elections for employee representation.* The right of individuals to vote by secret ballot is fundamental. Where state or federal law requires [or permits] elections or designations or authorizations of employee representation, the right of individuals to vote by secret ballot shall be guaranteed.

Hayes argues that the first sentence after the heading—"The right of individuals to vote by secret ballot is fundamental"—establishes an overarching right to secret ballot voting beyond the context of employee elections. As such, he concludes, the Initiatives discuss both a broad right to secret ballot voting, and a narrow right to secret ballot voting in the context of employee representation elections. We disagree.

In order to determine whether an initiative carries out a single object or purpose, an initiative is reviewed as a whole rather than piecemeal, and individual statements are examined in light of their context. *In re Title, Ballot Title, Submission Clause, and Summary for 1999–2000 # 235*, 3 P.3d 1219, 1223 (Colo.2000) (interpreting a sentence of an initiative in light of the sentence that preceded it). Here, although the first sentence of the Initiatives may initially appear to be broad in scope, the very next sentence confines its reach. In fact, the Initiatives' first sentence is bookended by the heading on one side and a narrow statement of purpose on the other, both of which serve to set it within a limited context.

First, the heading of the Initiatives, which reads "Elections for employee representation," frames the Initiatives' text. Using their heading to contextualize the text of the Initiatives comports with our analogous precedent regarding the use of statute headings in statutory construction. *See In re Petition of U.M. and S.M.*, 631 P.2d 165, 167 (Colo.1981). Where the General Assembly does not draft the heading, " 'no implication

---

1. The General Assembly outlined its intent in referring the constitutional prohibition to the state's voters in sections 1–40–106.5(e)(I)–(II), C.R.S. (2009).

2. The emphasized phrase quoted here stands as the heading to the Initiatives. The phrase "or permits," bracketed here, only appears in Initiatives # 22 and # 24.

or presumption of a legislative construction is to be drawn therefrom.'" *Id.* (quoting § 2–5–113(4), C.R.S. (2009)). However, we can employ a heading selected by the legislature as "an aid in construing a statute." *Id.* (citations omitted); *see also Martinez v. Cont'l Enter.*, 730 P.2d 308, 313 (Colo.1986) ("Although the title of a statute is not dispositive of legislative intent, it may be used as an aid in construing a statute." (citations omitted)). Here, the heading, which was before the Board when it made its decisions, declares the Initiatives are concerned with "[e]lections for employee representation." In the shadow of that heading, the first sentence cannot be read as establishing a general and fundamental right to secret ballot voting in any and all contexts.

Second, the following sentence of the Initiatives narrows their focus to those situations "[w]here state and federal law requires [or permits] elections or designations or authorizations of employee representation." Where the first sentence is a statement of principle (albeit one interpreted in light of the heading), the second is a discussion of application, outlining when and to what extent the right to a secret ballot will be protected. By describing its application, the second sentence of the Initiatives effectively places bounds on the Initiatives' preceding thesis, illustrating how the right to secret ballot voting proposed by the Initiatives would work in practice. *See In re Title, Ballot Title, Submission Clause, and Summary for 2005–2006 # 73 (In re Issue Comm. Contributions)*, 135 P.3d 736, 739 (Colo.2006) (sections of a measure that include "implementation or enforcement details directly tied to the initiative's single subject will not, in and of themselves, constitute a separate subject" (citations omitted)). The fact that the second sentence does not provide specific details—such as designating consequences for violation—does not make it any less a statement about application, nor mean that it

is so broad as to contain a subject separate from that of the first sentence.

Moreover, our analysis is bolstered by the Board's actions in this case. The title set by the Board for the Initiatives reflect contextual understanding of the Initiatives' first sentence. The Board describes the Initiatives as

[Amendments] to the Colorado constitution concerning the right to vote by secret ballot regarding employee representation, and, in connection therewith, guaranteeing the fundamental right of individuals [ ] to vote by secret ballot where state or federal law requires [or permits] elections or designations or authorizations of employee representation.[3]

The section from the beginning of the title to the first comma appears meant to paraphrase the first sentence of the proposed Initiatives, while the remaining portion outlines the second sentence. This restatement of the Initiatives' purpose confines the Initiatives entirely to the context of employee representation elections. The Board's actions—which are afforded all legitimate presumptions of propriety and which here track a natural reading of the Initiatives—thus further support our interpretation that any ambiguity here is resolved by reading the sentences of the Initiatives together. *See In re Title, Ballot Title, Submission Clause, and Summary for 1999–2000 # 215 (In re Prohibiting Certain Open Pit Mining)*, 3 P.3d 11, 14–15 (Colo.2000) (analyzing an initiative's clarity and determining that "any ambiguity in the meaning of [a used term was] clarified by its use in the summary").

Thus, reading the Initiatives as a whole, we conclude the opening statement of each Initiative that "[t]he right of individuals to vote by secret ballot is fundamental" is not discussing an overarching right to a secret ballot, but is simply stating the topic of the Initiatives—namely, the right to secret ballots in employment representation elections.[4]

3. This title is an amalgam of that set for each of the Initiatives. The variations between them, which are indicated by the bracketed sections, are without consequence for the purpose of this discussion.

4. This discussion also disposes with Hayes' second argument that the ballot title is misleading because it suggests "existing law provides a fundamental right to a secret ballot in an employee representation election ... where no such right exists." As we conclude that the first sentence of the Initiatives must be understood as confined by

The actions of the Board appropriately reflect this natural reading of the Initiatives. The Initiatives do not present a second issue "coiled up in the folds" of another, nor do they bundle two unconnected objectives under a single yes-or-no vote. *In re Dep't for Envtl. Conservation,* 172 P.3d at 875. We therefore hold that the Initiatives comply with the single-subject mandate of article V, section 1(5.5) of the Colorado Constitution, each submitting but one subject to voters for their consideration.

## II.

Hayes also argues that the Initiatives are misleading because the word "guaranteed," as used by the Initiatives, is likely to be misunderstood by voters. Although we are sensitive to such concerns, Hayes' argument is unfounded. *See In re Proposed Initiative on Parental Notification of Abortions for Minors (In re Parental Notification),* 794 P.2d 238, 242 (Colo.1990); § 1–40–106(3)(b), C.R.S. (2009) (requiring the Board to consider "the public confusion that might be caused by misleading titles").

The Initiatives each contain language to the effect that, in certain contexts, an individual's right to vote by secret ballot will be "guaranteed." Hayes contends that "guarantee" is used here as a legal term of art, and thus a plain reading of the Initiatives promises something they cannot deliver, specifically, that the right to a secret ballot will be protected without exception or restriction. Hayes asserts that this is not likely to match the legal reality of the Initiatives' implementation, and so the language misleads voters to expect greater protection of the right set forth in the Initiatives than may follow.

In urging this court to require a more specific description of what "guarantee" means under the Initiatives, Hayes relies on this court's decision in *In re Parental Notification,* 794 P.2d at 238. His reliance is misplaced. *In re Parental Notification* concerned an initiative seeking to require parental notification in the event that a minor sought an abortion. *See id.* at 242. The initiative defined "abortion" as terminating a

pregnancy at any time after the moment of fertilization, however that definition was excluded from the initiative's title and submission clause. *See id.* This court recognized that "[n]either Colorado statute nor common law [had] addressed the issue of when life begins," and therefore reversed the Board's actions and directed revisions of the title to incorporate the critical components of the definition. *Id.*

 Hayes' analogy to *In re Parental Notification* rests on a fundamental misreading of that case. In *In re Parental Notification,* the title of the initiative was found potentially misleading vis-à-vis the text of the initiative itself because the definition of the term "abortion" was contentious and voters would have been unaware that the text of the initiative defined it explicitly. *See id.* Here, Hayes is asking us to conclude that the text and title of the Initiatives are misleading vis-à-vis future legal interpretation and implementation. Hayes is essentially inviting us to interpret the legal scope of the Initiatives' "guarantee," and then require that the interpretation be spelled out in the titles. Such is beyond the scope of our review. While investigating whether an initiative presents multiple subjects, some limited legal analysis of the initiative's text may be necessary, as an initiative might present more than one subject only under certain readings. *See In re Dep't for Envtl. Conservation,* 172 P.3d at 874 (discussing appropriate scope of review of single-subject challenges). However, where a title or ballot title incorporates completely the same words used in the text of an initiative, the inquiry into their clarity will not anticipate possible legal arguments as to their meaning. *See, e.g., In re Title, Ballot Title, Submission Clause, and Summary for 1999–00 # 256,* 12 P.3d 246, 256 (Colo.2000) (noting that certain challenged phrases within a proposed initiative's summary "may possibly be the subject of future judicial interpretation"); *In re Title, Ballot Title, Submission Clause, and Summary for Proposed Initiated Constitutional Amendment Concerning the Fair Treatment of Injured Workers Amendment (In re Injured Workers Amendment),* 873

context, it follows that the statement is not misleading because of alleged overreaching.

P.2d 718, 721 (Colo.1994) ("In performing its title-setting function, the Board may not speculate on how a potential amendment would be interpreted and, if possible, harmonized with other relevant provisions. Such considerations are far beyond the scope of our review of the titles and summary of an initiative petition." (citations omitted)).

Hayes' argument fares no better if construed as a concern that "guarantee" is misleading or uncertain even as used colloquially. Titles and submission clauses should " 'enable the electorate, whether familiar or unfamiliar with the subject matter of a particular proposal, to determine intelligently whether to support or oppose such a proposal.' " *In re Parental Notification,* 794 P.2d at 242 (quoting *In re Proposed Initiative Concerning "State Personnel System,"* 691 P.2d 1121, 1123 (Colo.1984)). Thus, the purpose of reviewing an initiative for clarity parallels that of the single-subject requirement: voter protection. Furthermore, "we review the titles set by the Title Board with great deference...." *In re Issue Comm. Contributions,* 135 P.3d at 740 (citing *In re Title, Ballot Title, Submission Clause, and Summary for 1999–00 # 256,* 12 P.3d 246, 254 (Colo.2000)).

Hayes' argument concerns possible degrees of difference between the expectations of voters and the ultimate efficacy of the Initiatives; it does not strike at the fundamental operations or purpose of the Initiatives, as was the case in *In re Parental Notification.* 794 P.2d at 242 (noting that "the legal status of the fetus is one of the central issues in the abortion debate"). Whatever ambiguity there may be in the term "guarantee," it is not likely to confuse voters as to the purpose of the initiative, nor does it hide some hidden intent.

We conclude the Initiatives' use of "guarantee" does not inject uncertainty into their meaning or mislead voters as to their intended effect.

---

5. Except for the last clause, the definition of "political subdivision" incorporated in Initiative # 24 directly mirrors that in section 29–1–202(2), C.R.S. (2009). Definitions derived from existing statutes are generally not deemed misleading. *See, e.g., In re Prohibiting Certain Open Pit Mining,* 3 P.3d at 14 (upholding the use of "open

## III.

Finally, Hayes argues that the title, ballot title, and submission clause of Initiative # 24 is misleading.

Initiative # 24 includes language clarifying that the right of employees to vote by secret ballot extends to employees of the State of Colorado and all of its "political subdivisions." Although Initiative # 24's definition of "political subdivision" is largely lifted from statute,[5] it also encompasses "any entit[ies] that independently exercise[ ] governmental authority." *App'x C.* Hayes contends that this clause, as it likely includes some private entities, misleads voters as to the scope of Initiative # 24.

This argument, like the issue faced in *In re Parental Notification,* focuses on a perceived difference between language in the title and that in Initiative # 24. However, in *In re Parental Notification* the definition excluded from the title was novel and contentious. 794 P.2d at 242. Here, the definition of "political subdivision" included in Initiative # 24 conceives of nothing new or contentious. *Cf. In re Injured Workers Amendment,* 873 P.2d at 721 (interpreting *In re Parental Notification,* 794 P.2d at 242). Nearly a decade ago, the court of appeals publicly recognized that a private entity might be considered a "political subdivision" of the state in certain contexts. *See Denver Post Corp. v. Stapleton Dev. Corp.,* 19 P.3d 36, 41 (Colo.App. 2000) (private nonprofit corporation incorporated by city urban renewal authority to facilitate redevelopment of former airport held a "political subdivision"). Excluding the definition from the title does not obscure the initiative's content. Thus, the Board acted within the bounds of its discretion in setting title, ballot title, and submission clause without incorporating the definition of "political subdivision."

---

mining" where its use in an initiative conformed with statutory definition); *In re Injured Workers Amendment,* 873 P.2d at 721 (initiative language borrowed directly from statute was not misleading, nor did it "create a new legal standard which [was] likely to be controversial").

IV.

For the foregoing reasons, the actions of the Title Setting Board in setting titles, ballot titles, and submission clauses for the Initiatives are therefore affirmed.

### Appendix A—Proposed Initiative # 22

Be it Enacted by the People of the State of Colorado:

**SECTION I.** Article XVIII of the constitution of the state of Colorado is amended BY THE ADDITION OF A NEW SECTION to read:

**Section 16. Elections for employee representation.** THE RIGHT OF INDIVIDUALS TO VOTE BY SECRET BALLOT IS FUNDAMENTAL. WHERE STATE OR FEDERAL LAW REQUIRES OR PERMITS ELECTIONS OR DESIGNATIONS OR AUTHORIZATIONS OF EMPLOYEE REPRESENTATION, THE RIGHT OF INDIVIDUALS TO VOTE BY SECRET BALLOT SHALL BE GUARANTEED.

Title Board Actions with respect to Initiative # 22 The title as designated and fixed by the Board is as follows:

An amendment to the Colorado constitution concerning the right to vote by secret ballot regarding employee representation, and, in connection therewith, guaranteeing the fundamental right of individuals to vote by secret ballot where state or federal law requires or permits elections or designations or authorizations of employee representation.

The ballot title and submission clause as designated and fixed by the Board is as follows:

Shall there be an amendment to the Colorado constitution concerning the right to vote by secret ballot regarding employee representation, and, in connection therewith, guaranteeing the fundamental right of individuals to vote by secret ballot where state or federal law requires or permits elections or designations or authorizations of employee representation?

### Appendix B—Proposed Initiative # 23

Be it Enacted by the People of the State of Colorado:

**SECTION I.** Article XVIII of the constitution of the state of Colorado is amended BY THE ADDITION OF A NEW SECTION to read:

**Section 16. Elections for employee representation.** THE RIGHT OF INDIVIDUALS TO VOTE BY SECRET BALLOT IS FUNDAMENTAL. WHERE STATE OR FEDERAL LAW REQUIRES ELECTIONS OR DESIGNATIONS OR AUTHORIZATIONS OF EMPLOYEE REPRESENTATION, THE RIGHT OF INDIVIDUALS TO VOTE BY SECRET BALLOT SHALL BE GUARANTEED.

Title Board Actions with respect to Initiative # 23 The title as designated and fixed by the Board is as follows:

An amendment to the Colorado constitution concerning the right to vote by secret ballot regarding employee representation, and, in connection therewith, guaranteeing the fundamental right of individuals to vote by secret ballot where state or federal law requires elections or designations or authorizations of employee representation.

The ballot title and submission clause as designated and fixed by the Board is as follows:

Shall there be an amendment to the Colorado constitution concerning the right to vote by secret ballot regarding employee representation, and, in connection therewith, guaranteeing the fundamental right of individuals to vote by secret ballot where state or federal law requires elections or designations or authorizations of employee representation?

### Appendix C—Proposed Initiative # 24

Be it Enacted by the People of the State of Colorado:

**SECTION I.** Article XVIII of the constitution of the state of Colorado is amended BY THE ADDITION OF A NEW SECTION to read:

**Section 16. Elections for employee representation.** (1)THE RIGHT OF INDIVIDUALS TO VOTE BY SECRET BALLOT IS FUNDAMENTAL. WHERE STATE OR FEDERAL LAW REQUIRES OR PERMITS ELECTIONS OR DESIGNATIONS OR AUTHORIZATIONS OF

EMPLOYEE REPRESENTATION, THE RIGHT OF INDIVIDUALS TO VOTE BY SECRET BALLOT SHALL BE GUARANTEED.

(2) THE RIGHT OF EMPLOYEES TO CHOOSE REPRESENTATIVES BY SECRET BALLOT SHALL INCLUDE EMPLOYEES OF THE STATE OF COLORADO AND ALL OF ITS POLITICAL SUBDIVISIONS.

(3) THE RIGHT OF EMPLOYEES TO CHOOSE REPRESENTATIVES BY SECRET BALLOT SHALL INCLUDE EMPLOYEES OF ANY ORGANIZATION THAT IS NOT THE STATE OF COLORADO OR POLITICAL SUBDIVISION.

(4) "POLITICAL SUBDIVISION" SHALL INCLUDE A COUNTY, CITY AND COUNTY, CITY, TOWN, SERVICE AUTHORITY, SCHOOL DISTRICT, LOCAL IMPROVEMENT DISTRICT, LAW ENFORCEMENT AUTHORITY, CITY OR COUNTY HOUSING AUTHORITY, OR WATER, SANITATION, FIRE PROTECTION, METROPOLITAN, IRRIGATION, DRAINAGE, OR OTHER SPECIAL DISTRICT, OR ANY OTHER KIND OF MUNICIPAL, QUASI–MUNICIPAL, OR PUBLIC CORPORATION ORGANIZED PURSUANT TO LAW, OR ANY ENTITY THAT INDEPENDENTLY EXERCISES GOVERNMENTAL AUTHORITY.

Title Board Actions with respect to Initiative # 24 The title as designated and fixed by the Board is as follows:

An amendment to the Colorado constitution concerning the right to vote by secret ballot regarding employee representation, and, in connection therewith, guaranteeing the fundamental right of individuals, including employees of the state of Colorado and its political subdivisions, to vote by secret ballot where state or federal law requires or permits elections or designations or authorizations of employee representation.

The ballot title and submission clause as designated and fixed by the Board is as follows:

Shall there be an amendment to the Colorado constitution concerning the right to vote by secret ballot regarding employee representation, and, in connection therewith, guaranteeing the fundamental right of individuals, including employees of the state of Colorado and its political subdivisions, to vote by secret ballot where state or federal law requires or permits elections or designations or authorizations of employee representation?